UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WISEFAME INTERNATIONAL LTD., and IFM
INTERNATIONAL, INC.

                    Plaintiffs,

v.

                                        Case No. 08-14735

FKA DISTRIBUTING CO., d/b/a HOMEDICS-     Honorable Julian Abele Cook, Jr.
U.S.A., INC.,

                    Defendant.

ORDER

      The Court has recently reviewed its order of February 3, 2011 and, in retrospect, finds it

necessary to vacate that order and replace it with the current version so as to rectify certain clerical

errors.   The correct order, with its modifications, appears below.

***

      The Plaintiffs, Wisefame International Ltd. ("Wisefame") and IFM International, Inc.

("IFM") (collectively, "the Plaintiffs"), commenced this action against the Defendant, FKA

Distributing Co., doing business as HoMedics-USA, Inc. ("HoMedics"), seeking to obtain the

correction of an inventorship.   The Plaintiffs' claim is based on the filing of  U.S. Patent

Application No. 10/836,905, (which matured into U.S. Patent No. 7,128,721 ("the '721Patent"))

by HoMedics and has been brought pursuant to 35 U.S.C. § 256. The gravamen of the Plaintiffs'

position on this issue is that HoMedics failed to identify one of Wisefame's employees, Jian Hong

Zhong, as an inventor / co-inventor of the '721 Patent invention.

      Currently pending before the Court are several motions, including (1) HoMedics' motion

1

to dismiss and for the entry of a summary judgment, (2) the Plaintiffs' motion to extend discovery, (3), the Plaintiffs' motion for sanctions against HoMedics, (4) HoMedics' motion for leave to file an amended answer to the complaint, and (5) the Plaintiffs' motion for partial summary judgment, all of which will be considered by the Court *seriatim*.

I.

Wisefame is a corporation that was organized according to the laws of the People's Republic of China with its principal place of business in Douglasville, Georgia.  IFM, which is a wholly owned subsidiary of Wisefame and operates principally in Georgia,[1] sells and markets its products (including portable body massagers that are manufactured by and purchased from Wisefame and thereafter circulated throughout the United States). HoMedics is a corporation that was organized in Michigan where it maintains its principal place of business in Commerce Township.

According to the Plaintiffs, IFM was (1) licensed by Wisefame to serve as its sole licensee in the United States and (2) given the exclusive rights to market and sell its products.  Wisefame submits that HoMedics sells its products to retailers nationwide, including major department stores, discount drug stores and specialty stores such as Dillards, CVS and Best Buy. Both Wisefame and IFM claim to be direct competitors  with HoMedics in the marketplace for the sale of portable body massagers.

The Plaintiffs allege that in 2001, Jian Hong Zhong, while working for Wisefame, designed a back massage cushion apparatus which is known as the SC-1. This device became operational

---

[1] After initially being filed in the U.S. District Court for the Northern District of Georgia, this lawsuit was transferred to this Court on November 10, 2008.

2

with kneading rollers which move up and down the back of the consumer.  After a continuation of its development, the SC-1 was incorporated into a kneading massage cushion which was known to Wisefame as the SBM-200.[2]  A prototype of the SC-1 was created in September of 2001 and sent one month later to a "Mr. Chung" of Jedersun International Company ("Jedersun"), a Taiwanese entity that supplies products to HoMedics.  Wisefame submits that it continued its improvement in the manufacturing process of the SC-1 and shared its improved prototypes with Jedersun in July and November of 2002.  On December 13, 2002, Wisefame applied for a Chinese Patent in which it identified Zhong as the sole inventor.  Eleven months later on November 26, 2003, Chinese Patent No. 02250262.9 ("the Chinese Patent") was issued to Wisefame, which owned the rights of ownership to the invention.

It is the Plaintiffs' contention that from May 2003 through September 2007, HoMedics purchased approximately 2,000,000 SBM-200 portable body massagers through Jedersun.  Furthermore, they submit that on April 30, 2004, HoMedics applied[3] for a patent in the United States for a "Portable Body Massager," which matured into the '721 Patent that was issued on October 31, 2006 to joint inventors, Roman Ferber and Stephen Chung[4]. One feature of the '721 Patent is its use of a single drive motor to simultaneously (1) cause massage nodes to knead the

---

[2]According to Wisefame, Zhong had designed a full-course upper and lower body massager which was designated as the TC-1 and covered by Chinese Patent No. 01214070.5 (issued on November 28, 2001).  The SC-1 was developed as an improvement over the TC-1 in that it sought to combine the functionality of a portable back massager with a large chair massager.

[3]The Patent Application was based on Application Serial. Number 10/836,905. It is the contention of Wisefame that neither it nor Zhong were aware of the '721 Application at the time it was filed.

[4]It is unclear whether the "Mr. Chung" of Jedersun is the same individual as the "Stephen Chung" named in the '721 Patent.

3

user's back, and (2) transform the massage function over a range of movements from the user's shoulders to its waist.  According to the '721 Patent, these features distinguished the Portable Body Massager from the prior art, which was relatively complex and utilized a number of different components, including a large housing (like a chair) and two motors.  Generally speaking, the '721 Patent characterized the prior art massagers as being more costly, heavier, and less portable than the Portable Body Massager.

Wisefame asserts that although there are differences between the claims of the '721 Patent and the Chinese Patent, "the core massage mechanism claimed and disclosed in the '721 Patent is substantially identical to the mechanism invented by Zhong and owned by Wisefame . . . in the earlier Chinese Patent."  Thus, Wisefame contends in its currently pending motion that Zhong was inadvertently omitted as a co-inventor on the application that evolved into the '721 Patent.

Furthermore and in support of its position, Wisefame has proffered certain evidence that it believes to be corroborative of its claim that Zhong is a co-inventor of the patent; namely, (1) the similarity between the claims of the '721 Patent and the Chinese Patent, (2) engineering drawings from Zhong's engineering notebook which reflect a "substantial similarity" between Zhong's invention and Figure 2 of the '721 Patent, (3) proof that the '721 Application (which contains Figure 2) was not filed until one year after Zhong had prepared very similar engineering drawings, and (4) the conspicuous absence of similar engineering documents that could demonstrate the inventive contributions of Roman Ferber and Stephen Chung to the subject matter of the '721 Patent.

 HoMedics disagrees, noting that Ferber and Chung, having collaborated to make numerous patents in the past, did so on this occasion in order to create the single drive motor massager of the

'721 patent between the years 2000 through 2002. According to HoMedics, Ferber and Chung reduced their collective ideas into reality in 2002 by engaging Wisefame as the manufacturer who would build a prototype of the single drive motor massager of the '721 Patent. HoMedics agrees that it purchased approximately 2,000,000 single drive motor massagers (known as the SBM-200), all of which had been manufactured by Wisefame. However, HoMedics posits that (1) any engineering work performed by Zhong on the single drive motor massager of the '721 Patent was done "remotely" from Ferber and Chung, and (2) Zhong credited himself for the inventive concepts that rightfully belonged to Ferber and Chung in connection with the Chinese Patent.

Furthermore, HoMedics notes that a separate U.S. Patent Application was filed by Wisefame on March 16, 2005 under Serial Number 11/082,016 ("the Luo Application") in which it named Xiuqun Luo as the sole inventor of a "Massage Device."[5] HoMedics contends that (1) the Luo Application included a single motor embodiment which was substantially similar to the '721 Patent, and (2) Luo declared under the penalty of perjury that he was the original, first and sole inventor of the subject matter which was claimed in this application. Ultimately, the United States Patent and Trademark Office ("USPTO") issued an Office Action which rejected the single drive motor claims of the Luo Application, noting that it had been previously disclosed in the application which was the precursor to the '721 Patent. HoMedics noted that, despite having been given three months to reply to the Office Action, Wisefame failed to issue a response. As a result, the Luo Application was treated by the USPTO as having been abandoned. HoMedics also points out what

---

[5]According to HoMedics, Luo had assigned his interest in the Luo Application to Chichun Wu of Wisefame. Moreover, HoMedics notes that the Luo Application originates from a different Chinese Patent (to wit, CN 2004/200456092) than that held by Wisefame through the work of Zhong.

5

it believes to be conspicuous structural and functional similarities between the Luo Application and the '721 Patent. Ultimately, it submits that the history of the Luo Application casts a cloud over what it perceives as Wisefame's claim that Zhong - not Luo, as asserted in the Luo Application - is the "original, first and sole inventor of the claimed subject matter of the '721 Patent."

## II.

In support of its dispositive motion, HoMedics argues that the complaint in this lawsuit should be dismissed and/or resolved by the entry of a summary judgment because Wisefame's attempt to correct the inventorship is barred by 35 U.S.C. § 102(d). Fed R. Civ. P. 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief [in order to] give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). While this pleading standard does not mandate "detailed" factual allegations, it does require more than the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555. Thus, the complaint must offer more than "an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Otherwise, it is subject to dismissal under Rule 12(b)(6). Generally, when considering a motion to dismiss, a court must construe the complaint in a light that is most favorable to the plaintiffs, accept their factual allegations as being true, and draw all reasonable factual inferences in their favor. *Tipton v. Corr. Med. Services, Inc.*, No. 08-421, 2009 WL 2135226 (W.D.Mich. July 15, 2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause

6

of action, supported by mere conclusory statements, do not suffice." *Id.* Claims are capable of surviving a Rule 12(b)(6) motion only if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level . . . on the assumption that all [of] the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555.  As emphasized by *Iqbal*, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is "plausible" on its face. *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

Under Fed. R. Civ. P. 56(c), a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  The burden is on the movants to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In assessing a summary judgment motion, a court is obligated to examine the  pleadings, as well as the depositions, the answers to interrogatories, the admissions, and the affidavits in a light that is most favorable to the nonmoving parties.  Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp*., 749 F.2d 1205, 1210-11 (6th Cir. 1984). Moreover, it  is the responsibility of the court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving [parties]." *Id.* at 248.  Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponents] must prevail as a matter of law," *id.* at 252, or (2) the opponents have failed to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*

7

*Corp.*, 477 U.S. at 322.  The Supreme Court has emphasized that the presentation of a mere scintilla

of supporting evidence is insufficient.  *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

III.

According to the Plaintiffs, their complaint is grounded on a claim for the correction of

inventorship under 35 U.S.C. § 256, which provides in relevant part that whenever an inventor is

not named in a patent because of an error that "arose without any deceptive intention on his part,

the Director may, on application of all the parties and assignees, with proof of the facts and such

other requirements as may be imposed, issue a certificate correcting such error."  The statute further

provides that such an omission "shall not invalidate the patent in which such error occurred if it can

be corrected as provided in this section[ ]," and it authorizes a court presented with such a claim

to "order correction of the patent on notice and hearing of all parties concerned . . . ."  *Id.*

It is HoMedics' contention that the Plaintiffs' claim under 35 U.S.C. § 102(d) is invalid

because, in its judgment, this statute would have precluded  Zhong from obtaining a patent  in the

United States for the same invention that was disclosed by him in his Chinese Patent.

Section 102(d) provides in pertinent part that:

A person shall be entitled to a patent unless–

(d) the invention was first patented or caused to be patented . . . by the applicant or
his legal representatives or assigns in a foreign country prior to the date of the
application for patent in this country on an application for patent or inventor's
certificate filed more than twelve months before the filing of the application in the
United States, . . . .

In order for this statutory bar to have applicability - as set forth in §102(d) -  two preliminary

conditions must  be satisfied; namely, (1) the issuance of a patent in a foreign country prior to the

8

filing of a patent application in the United States, and (2) the filing of a foreign patent application more than twelve months prior to the filing of the patent application in the United States. HoMedics proclaims that both conditions have been met. In addressing the first condition, it points out that Zhong's patent in China was issued on November 26, 2003 - approximately five months prior to the filing of the application to the '721 Patent. HoMedics says that the second condition was also satisfied because Zhong's Chinese Patent application was filed on December 13, 2002 - more than twelve months before the filing of the '721 Patent Application.

Thus, it submits that by relying on the Chinese Patent as proof of a prior invention by Zhong, the Plaintiffs' pleading recites a condition under §102(d) which causes him to suffer a loss of his right to receive a patent on the same subject matter. This- under HoMedics' theory - renders Wisefame's complaint as implausible as a matter of law, which, in turn, justifies its request for a dismissal of the complaint.

In response, Wisefame rejects this analysis and asserts that HoMedics' interpretation of §102(d) does not apply to the current case. Wisefame argues that Section 102(d) merely implicates the issuance of patents in the United States, and does not hamper its efforts as an aggrieved party to correct the inventorship of the '721 Patent by adding Zhong as an inventor or co-inventor pursuant to 35 U.S.C. § 256. Moreover, Wisefame notes that its claim (i.e., that Zhong is the sole inventor – or at least a co-inventor – of the '721 Patent) is not based exclusively on the Chinese Patent. Wisefame acknowledges that the '721 Patent and the Chinese Patent do not cover the same invention. Yet it asserts that its proof that Zhong is a co-inventor is based on other corroborating evidence which was not claimed or disclosed in the Chinese Patent. To this end, Wisefame concludes that §102(d) cannot apply by its own terms because the invention as claimed in the '721

Patent was not "patented" in China, which is a prerequisite to the application of that section.

In resolving HoMedics' motion to dismiss, the Court accepts the well-pleaded allegations of the complaint as true. Significantly, the Plaintiffs do not seek a declaration that the '721 Patent violates the Chinese Patent, or that HoMedics' right to the '721Patent is otherwise invalid. To the contrary, they merely seek a determination from the Court that Zhong's contribution the patent was inadvertently omitted.

The Court notes that HoMedics has not presented any case law or some other authority which would establish or even suggest that - as a matter of law - a correction of inventorship claim under §256 is necessarily barred if the patent is otherwise invalid under §102(d). On the other hand, the Court is persuaded by authority presented by Wisefame which at least implicitly suggests that a claim for correcting inventorship can proceed notwithstanding other potential challenges to the validity of the patent. *See generally, Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Tecs., Ltd.,* 292 F.3d 1363, 1377 (Fed. Cir. 2002) ("Nothing in the statute governing a court's power to correct inventorship, 35 U.S.C. § 256, . . . prevents a court from correcting the inventorship of an unenforceable patent."). And, even if the Court was so inclined to accept this argument, HoMedics has not established - through argument or evidence - that the invention, as claimed in the '721 Patent, was first patented in China, which is a prerequisite for the application of the §102(d) statutory bar.[6]   Accordingly, the Court rejects HoMedics' argument that the complaint must fail as a matter of law.

─────────────

[6]Notwithstanding HoMedics' argument, it is not logically untenable to conclude that although the core massage mechanism claimed and disclosed in the '721 Patent is substantially identical to that of the Chinese Patent, the two patents are distinct in other respects and, thus, do not cover the exact same invention.

In its motion for a summary judgment, HoMedics expends considerable space and energy in accusing Wisefame of "unclean hands," as evidenced by the purportedly false testimony that had been proffered in support of the Luo Application. HoMedics argues that it is impossible for Luo and Zhong to collectively be identified as the "sole inventor" of the subject matter of the '721 Patent. Yet, HoMedics maintains that Luo has claimed as much when he sought to patent a massage device that was ultimately rejected for its similarity to the '721 Patent. In HoMedics' view, this conduct - which it deems to have been particularly egregious - deprives Wisefame of any entitlement to rights to the '721 Patent. However, the Court declines this invitation to grant a summary judgment to HoMedics on this basis.

It is apparent from even a casual reading of the record that HoMedics' request for relief is not warranted under Rule 56(c). As HoMedics acknowledges, in order to prevail on an "unclean hands" theory, the proponent must show - by clear and convincing evidence - that its opponent has engaged in a particularly egregious conduct which would change the equities significantly in the favor of the party who proclaims the act of impropriety. *See generally, Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1361 (Fed. Cir. 2008). Viewing the facts in a light most favorable to the Plaintiffs, as the non-moving parties, the Court finds the record to be devoid of "clear and convincing" evidence of any wrongdoing by Wisefame which amounts to "particularly egregious conduct." Other than accusing Luo of harboring subversive intent in making what it sees as a false representation in his application, HoMedics offers no evidence through which the Court could independently assess this claim, let alone reach the same conclusion. As Wisefame notes, every patent applicant must make a similar declaration about being the sole inventor of his or her invention. Inferring deceptive intent from a statement that later simply turns out to be incorrect or

11

mistaken would undermine the reliability of the inventive process. Perhaps more importantly, the Court does not believe that - on the basis of the current record - the alleged misconduct undermines the legitimacy of the Plaintiffs' currently pending correction of an inventorship claim. Thus, HoMedics' motion for a summary judgment on this basis must, be, and is denied.

IV.

In the next item ripe for resolution, the Plaintiffs seek to obtain an extension of the discovery period in this case. In making this motion, they seek to expand discovery by a period of sixty days following a resolution of the foregoing motions to dismiss and for the entry of a summary judgment. In support of this request, they assert that (1) efforts to resolve the case without the need for discovery have been unsuccessful, and (2) despite the need for discovery, HoMedics has repeatedly refused to fully participate as evidenced by its inadequate document production, obstinance and/or refusal to respond to straightforward requests, failure to schedule depositions, deficient responses to interrogatories, and one-sided attempts to stay discovery pending resolution of its motion to dismiss and/or for summary judgment. In the Plaintiffs' view, additional time is needed in order to obtain additional discovery and to resolve the outstanding issues created by the conduct of the HoMedics. Acknowledging that the Court set August 20, 2010 as the deadline for conducting discovery, the Plaintiffs posit that they have satisfied the "good cause" requirement of Fed. R. Civ. P. 6(b)(1) which, in their opinion, warrants an extension of the requested time.

HoMedics opposes the Plaintiffs' motion and notes that a scheduling order may only be modified for good cause, which it believes the Plaintiffs have not shown. It further notes in conclusory terms that the Plaintiffs have not been diligent in pursing discovery. HoMedics' most vigorous objection is that a litigation cloud has been placed over its ownership of the '721 Patent

because of the 30-month pendency of the case.

Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, a scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Court of Appeals for the Sixth Circuit has held that "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Financial Corp.,* 281 F.3d 613, 625 (6th Cir. 2002). In considering a request to modify the scheduling order, "another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

Here, the Court finds that the Plaintiffs have established good cause for the requested extension of discovery in this matter. Although they could have scheduled their requests for depositions sooner and even sought relief from this Court with a motion to compel discovery, it appears that they have otherwise been diligent in attempting to secure information from HoMedics, which has been resisted for a variety of reasons. The record suggests that all parties attempted, in good faith, to resolve this matter without the need for discovery, and that they were left with a shortened window of opportunity to garner necessary information – from June of 2010 through August of 2010 when settlement negotiations proved unfruitful.

In summary, the Court does not believe that the Plaintiffs have been derelict in attempting to meet the Court imposed case management requirements. Moreover, the Court finds the claim of prejudice by HoMedics to be unpersuasive, inasmuch as the "litigation cloud" alone does not suggest that a brief extension of discovery will significantly delay the progress of the case. Because the Plaintiffs' request for an extension appears to be reasonable, the current deadlines for completing discovery and the filing of dispositive motions are extended by thirty days and sixty days from the

13

date of this order, respectively.

V.

Next, the Plaintiffs ask the Court to impose sanctions upon HoMedics pursuant to Fed. R. Civ. P. 11 for asserting claims in its motions to dismiss and for a summary judgment that are, in their opinions, unwarranted by existing law and "totally lacking" in evidentiary support. They note that, despite having provided HoMedics with controlling authority which clearly rebuts the arguments in their dispositive motions, it has unjustifiably rejected the proffered case authorities while continuing to advocate an untenable position. The Plaintiffs cite *Pannu, supra*, as proof that, although Section 102(d) implicates the issuance of patents in the United States, claims under Section 256 of correcting inventorship are completely distinct. Moreover, they contend that HoMedics waived its factually unsupported unclean hands argument when it failed to assert this doctrine as an affirmative defense.

Under Fed. R. Civ. P. 11(c), a court, after providing notice and a reasonable opportunity to respond, may sanction an attorney, law firm, or party that it finds to be in violation of Rule 11(b). In turn, this Rule recognizes that a litigant or legal representative when filing a pleading with the Court certifies that:

> (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

> (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Civ. P. 11(b). Within the Sixth Circuit, the test for the imposition of Rule 11 sanctions is

14

"whether the individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L & J Development Co., Inc.*, 115 F.3d 378, 384 (6th Cir. 1997).

After carefully reviewing the record and arguments in this matter, the Court concludes that the Plaintiffs' request for imposition of sanctions against HoMedics must be rejected. While the Court ultimately sided with Plaintiffs when it disagreed with HoMedics' Rule 12b(6) and Rule 56(c) arguments, there is no evidence that its position in opposition was frivolous or unsupported by law. To the contrary, HoMedics, in challenging the Plaintiffs' request for relief, has raised a legitimate legal challenge that highlights a potential tension between 35 U.S.C. § 102(d) and the savings mechanism of 35 U.S.C. § 256. Clearly, it is not an abuse of the judicial process for a litigant to advocate a novel interpretation of the law. Moreover and contrary to the Plaintiffs' contention, the *Pannu* case does not represent the ultimate authority on the questions raised by HoMedics in its pleadings. There is nothing in the record with which to support the argument that HoMedics acted in bad faith or with an intent to harass the Plaintiffs or their counsel. Because the Court is not persuaded that HoMedics' conduct has violated the acceptable standard of conduct for a litigant, the Plaintiffs' request for sanctions must be, and is, denied.

VI.

The Court now turns to a request by HoMedics for leave to file an amended answer to the complaint that will raise additional affirmative defenses and make a jury demand. In support of this request, HoMedics notes that in the 2 ½ years since the original answer and affirmative defenses were filed, it has learned of certain misconduct by Wisefame relating to the Luo Application. Thus, it seeks to amend its answer by including facts that will (1) illustrate Wisefame's awareness of the '721 Patent, (2) refine its affirmative defense which speaks to the Plaintiffs' failure to state a claim,

15

(3) set forth the added affirmative defense of unclean hands with factual particularity, and (4) refine its affirmative defense of equitable estoppel.

HoMedics also seeks to withdraw its challenges to this lawsuit which are based on such defenses as the lack of personal jurisdiction, proper venue, or subject matter jurisdiction. This motion is opposed by the Plaintiffs, who contend that (1) HoMedics has delayed bringing its motion without any justification, (2) the proposed amendments are futile, and (3) they will be jointly prejudiced if the proposed amendments are allowed because the time in which to conduct discovery has now expired.

According to Fed. R. Civ. P. 15(a)(2), a court may "freely give leave [to amend a pleading] when justice so requires." This Rule reaffirms the principle that cases should be tried on their merits "rather than [on] the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)). But, if a proposed amendment would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may also disallow the amendment because of its inevitable futility. *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382 (6th Cir.1993).

Upon examining the pleadings and evidence in the present record, the Court accepts the request by HoMedics to be justifiable. The primary thrust of HoMedics' argument is that the Plaintiff's conduct with regard to the Luo Application is clearly suggestive that they are capable of dishonesty, were not candid with the United States Patent and Trademark Office, and breached their ethical duties of candor, good faith, and honesty in pursuing patents. The Court finds that, while the argument is somewhat tenuous, the "unclean hands" defense is relevant to the requirement under Section 256 that there be an absence of deception by the "omitted" inventor. Accepting HoMedics'

16

contentions regarding Wisefame's handling of the Luo Application as being true for the purpose of this motion only, the Court finds that is plausible for a jury to infer that (1) Wisefame tried and failed to misuse the Luo Application with regard to the '721 Patent, and (2) when this effort was thwarted, Wisefame filed this lawsuit in an effort to accomplish indirectly through Section 256 that which it could not do directly.

The Court disagrees with Wisefame's argument on this issue. Although HoMedics is attempting to amend its complaint by adding the element of futility to this particular affirmative defense, the Court believes that such a modification would not be futile. Hence, HoMedics' motion to amend is granted. The Court also grants HoMedics' request to modify the remainder of its answer in the manner raised by its pleading.

VII.

The final item pending consideration by the Court is a motion by the Plaintiffs who seek the entry of a partial summary judgment on their claim that Zhong is a co-inventor of the '721 Patent. The Court of Appeals for the Federal Circuit has held that a patent is invalid if "more or less than the true inventors are named." *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002). On the other hand, a patent is presumed to be valid, and there is a corresponding presumption that the inventors who are named in the patent are the true and only inventors. *Id.* The Federal Circuit acknowledges that when parties are omitted from a patent, 35 U.S.C. § 256 allows the patent to be corrected as long as the nonjoinder was done "without deceptive intent on the part of the person erroneously left off the patent." *Id.*

It is well settled that co-inventors of a patent need not "physically work together or at the same time," "make the same type or amount of contribution," or "make a contribution to the subject

matter of every claim of the patent." *Trovan* at 1302.[7]  Nevertheless, every joint inventor must generally contribute to the conception of the invention, inasmuch as "[c]onception is the touchstone of inventorship." *Id.*  According to the Federal Circuit, conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).   An idea is sufficiently "definite and permanent" when "only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Id.*

To show the joint venture in the creation and development of a patent, the putative co-inventor(s) must prove their contribution to the conception of the claims by clear and convincing evidence. *Id.* at 1461.  Standing alone, a co-inventor's testimony is not enough to meet this burden, and there must be evidence to corroborate such testimony.  *Id.*  A so-called "rule of reason" analysis must be applied to determine whether the co-inventor's prior conception testimony has been corroborated.  *Price v. Symesek,* 988 F.2d 1187, 1195 (Fed. Cir. 1993).  To that end, a court must evaluate all of the pertinent evidence to ensure that it reaches a sound determination as to the credibility of the co-inventor's story.  *Id.*  Corroborating evidence exists in many forms, including contemporaneous documents prepared by a putative co-inventor or others, circumstantial evidence about the inventive process, and/or the oral testimony of other persons.  Because contemporaneous documentary or physical evidence is created at the time of the conception of the invention, it can serve as extremely reliable corroboration, so that the risk of litigation-inspired fabrication is

---

[7]One does not qualify as a joint inventor by merely assisting the actual inventor after the conception of the claimed invention.   *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  One who simply suggests an idea of a result to be accomplished, rather than a means of accomplishing it, is not a joint inventor.  *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.2d 1352 (Fed. Cir. 2004).

18

eliminated.  *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.,* 264 F.3d 1344 (Fed. Cir. 2001).  As required by Section 256, the omitted co-inventor must also be free from deceptive intent related to his nonjoinder in the patent.  *See generally, Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997).

To support their  request for a summary judgment on the first point, the Plaintiffs cite to the Chinese language excerpts from Zhong's engineering notebook (dated December 18, 2002) that purport to describe a communication between Chung and Zhong regarding changes to the SC-1 massager.  Although the proffer of this  engineering notebook may be thought by some people as a useful evidentiary tool in a situation such as here, it - standing alone - is without value to the Court for three reasons; namely, (1) the Court is not versed in any form of the Chinese language; (2) the engineering book was submitted to the Court without any adaptation of English for a  translation of its contents; and (3) the documents were proffered without any verification from its proponent as to their content.

This leaves a one-line declaration from Wisefame's General Manager, Chi Wu Chiang, as the only evidentiary support of the Plaintiffs' collaboration claim.  In his declaration, Chiang does not speak directly to the collaborative efforts between Ferber and Stephen Chung. Rather, he merely notes that  Wisefame "provided a sample of the SC1 to its customer Jedersun International Co. ("JDS"), a Taiwan trading company that on information and belief supplies products to HoMedics." In light of such thin evidence, the Court does not believe that a reasonable fact-finder would be compelled to render a judgment for the Plaintiffs on this aspect of their claim. Accordingly, to the extent that the Plaintiffs  have requested a summary judgment on this issue, the motion must be, and is, denied.

19

Similarly, the Court believes that there is a genuine issue of a material fact as to whether the Plaintiffs acted deceptively in intentionally withholding Zhong's name from the '721 Patent. Viewing the record evidence in a light most favorable to HoMedics reveals that a fact-finder could reasonably infer that (1) Wisefame learned of the '721 Patent Application five months before the Patent actually issued, and (2) since its effort to obtain the Luo Application had failed in challenging the '721 technology, (3) it could not ask to be added as an inventor, thereby prompting it to file this action under 35 U.S.C. § 256 to accomplish indirectly what it could not do directly through the USPTO. Inasmuch as the lack of deceptive intent is central to a claim for correcting inventorship, the Plaintiffs are not entitled to a summary judgment on this element.

However, a closer question is presented by the Plaintiffs' primary claim (relating to the co-inventorship, if any, of Zhong) and the Court, after reviewing the evidence, concludes that the entry of a summary judgment is appropriate for several reasons. First and foremost, the Plaintiffs have provided the Court with an expansive declaration from Zhong whose statements, while arguably self-serving, outlined his extensive work on the massage technology. He also explains that after providing initial prototypes to "Mr. Chung" of Jedersun and thereafter improving the manufacturing process for the SC-1, subsequent versions of the SC-1 were shared with Jedersun. He claims to have contributed significantly to the development of the portable back massager. More persuasively, the Plaintiffs provide the Court with extensive, unrebutted corroborating evidence which strongly suggests the existence of a high degree of similarity between the massage mechanism, which has been claimed and disclosed in the Chinese Patent and as part of the '721 Patent. For example, claim 1 of the '721 Patent states in pertinent part that:

What is claimed is:

1. A portable body massager sized to be received and supported by a conventional chair, the massager comprising:

> a carriage oriented in the housing and cooperating with the guide for limited longitudinal translation in the housing along the guide; a motor supported upon the carriage, the motor having a motor output shaft driven thereby, the motor output shaft being operably coupled to the housing to translate the carriage along the guide; and at least a pair of massage members transversely spaced about the longitudinal axis, each of the [sic] at least a pair of massage members being supported by the carriage for rotation relative to the carriage about an axis that is generally perpendicular to both the longitudinal axis of the housing and a transverse axis of the housing, the massage member axes being transversely spaced apart for providing a kneading massage effect, . . . .

Similarly, Wisefame alleges that the Chinese Patent offers the following claims:[8]

1.    One kind of massage device structure comprises the main body, its characteristic lies in: in the main body a transmitting system of worms and worm wheels is equipped, in which the worm is installed on the output shaft of a power device, and one end of rotating shaft connected with the worm wheels protrudes outside the main body and is connected with a rotating shelf which is mounted with a pair of kneading heads. The movable joint which can rotate by itself is between the kneading head and the rotating shelf.  In the related worm and worm wheel transmitting system, there are two worm wheels symmetrically positioned at the sides of the worm, one of the two worm wheels is connected with a small gear, the small gear is joggled with an intermediary gear.  The worm wheel is transmitted with a speed-down to the big gear through the small gear and the intermediary gear.  A second gear is mounted at the side of the big gear to joggle with the rack which is correspondingly set on the massage chair.

2.    The massage device as claimed in claim 1, its characteristic lies in: The related kneading heads are in mushroom shape, the two kneading head(s) on the two rotating shelves are provided accordingly, that is, the two kneading heads on the two rotating shelves are position [sic] at the farthest spot or the nearest one of the axes of the power device.

A brief examination of some of the terms in common between the two Patents reveals significant

similarity in the devices.  As illustrated by the chart on page 5 of the Plaintiffs' motion for partial

---

[8]Wisefame has not provided the Court with a copy of the Chinese Patent, in its original form or as an English translation.  Accordingly, the comparison of the claims by the Court is based on the Plaintiffs' representation that this language appears in the Chinese Patent.

21

summary judgment, the two structures have similar functions.  In other places in the two patents which have not been described above, (1) the '721 Patent refers to and illustrates a "motor," while the Chinese Patent exhibits a "power device"; (2) the '721 Patent depicts "massage nodes," whereas the Chinese Patent makes reference to "kneading heads"; (3) the '721 Patent references a "worm gear," which the Chinese Patent calls a "worm wheel," (4) both devices describe a "worm"; and (5) the '721 Patent illustrates the presence of a "gear shaft," which the Chinese Patent identifies as a "rotating shaft."  Perhaps most compelling is the similarities that emerge from a visual side-by-side inspection of Figure 2 of the '721 Patent when juxtaposed with one of Zhong's drawings from his engineering notebook.    Though there are differences, the two illustrations bear a striking resemblance to one another.  This strongly suggests that the earlier in time document – prepared by Zhong – must have played some role in influencing the design of Figure 2.

Notably, HoMedics has not mounted any challenge whatsoever in response to Wisefame's claim on this point.  HoMedics has failed to proffer any evidence which tends to contradict Zhong's vast documentation, and its responsive pleading devotes no time to addressing the merits of the co-inventorship claim, aside from challenging collaboration and deceptive intent.  While those elements certainly must be established by the Plaintiffs as part of their case-in-chief, the Court finds that the overwhelming evidence presented on the current record compels the entry of a summary judgment in the Plaintiffs' favor on this limited aspect of their claim.  Accordingly, the Plaintiffs' motion for a partial summary judgment is granted.

VIII.

Therefore, for the reasons stated above, the Court finds as follows:

(1)     HoMedics' motion to dismiss and for summary judgment, Docket Entry No. 41, is denied;

22

    (2)      The Plaintiffs' motion to extend the discovery period and deadline for filing dispositive motions, Docket Entry No. 44, is granted. The current discovery deadline is extended by thirty days from the date of this order, and the deadline for filing dispositive motions is extended by sixty days from the date of this order;

    (3)      The Plaintiffs' motion for sanctions, Docket Entry No. 48, is denied;

    (4)      HoMedics' motion to file an amended answer, Docket Entry No. 50, is granted;

    (5)      The Plaintiffs' motion for partial summary judgment, Docket Entry No. 54, is granted; and

    (6)      In light of the parties' agreement that the Court should grant Docket No. 51, the Plaintiffs' motion to strike and re-file a redacted version of Exhibit A to their motion to extend discovery, the request is granted.

IT IS SO ORDERED

Dated:  February 7, 2011               s/Julian Abele Cook, Jr.
        Detroit, Michigan             JULIAN ABELE COOK, JR.
                                  United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 7, 2011.

                                       s/ Kay Doaks
                                       Case Manager